# Exhibit A

## COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS.

SUPERIOR COURT DEPARTMENT
BRISTOL DIVISION

RECEIVED

11/29/19

BRISTOL SUPERIOR COURT

REBECCA SYMONDS,

    Plaintiff,

    v.

CREDICO USA, PLLC, IMPERIAL
MARKETING CONCEPTS, INC., and
VERIZON, INC.,

    Defendants

DOCKET NO. 1973CV01131

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

REBECCA SYMONDS ("Plaintiff"), by and through her attorneys, Aprodu | Conley,

PLLC, as and for her complaint against CREDICO USA, PLLC ("Credico"), IMPERIAL

MARKETING CONCEPTS, INC. ("Imperial"), and VERIZON, INC. ("Verizon") (collectively

"Defendants"), alleges the following upon information and belief:

### NATURE OF ACTION

1.    This action seeks damages for Defendants' violations of Massachusetts and Federal

Laws related to the payment of wages, classification of workers, and breach of contract.

2.    Plaintiff was jointly employed by Defendants between November 28, 2016 and

approximately March 20, 2017, during which time she was not paid according to the terms of

her contract, or in accordance with applicable laws, including but not limited to, 29 U.S.C. §§

206, 207, M.G.L. c. 148B, M.G.L. c. 149, and M.G.L. c. 151, §§ 1, 1A, 2, 7.

1

3.     Plaintiff was misclassified as an independent contractor during her employment with the Defendants.

## PARTIES

4.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 3 above as if fully set forth in their entirety.

5.     Plaintiff is an adult individual who resides in the Commonwealth of Massachusetts, County of Middlesex. Plaintiff was employed by the Defendants from on or about November 28, 2016 to on or about March 20 2017.

6.     At all times relevant and material hereto Plaintiff worked at Defendants' locations in North Attleboro in the Commonwealth of Massachusetts.

7.     Credico is a Delaware Corporation with its principal place of business located at 525 W. Monroe St., #900, Chicago, Illinois 60661.

8.     Imperial is a Rhode Island Corporation with its principal place of business located at 33 Summer St., Suite 3, Pawtucket, Rhode Island 02860. At all relevant times, Kokila Alahakoon was president of Imperial.

9.     Verizon is a Delaware Corporation with its principal place of business located at One Verizon Way, Basking Ridge, NJ 07920

## JURISDICTION AND VENUE

10.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 above as if fully set forth in their entirety.

11.     The jurisdiction of this Court is proper as damages will exceed $25,000.

12.     Venue is proper, as the defendant conducted a significant amount of of her work activities in the city of North Attleboro in the Commonwealth of Massachusetts.

2

## STATEMENTS OF FACTS

13. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 12 above as if fully set forth in their entirety.

14. Verizon engages in the business of, *inter alia*, selling "Verizon FIOS" internet services to consumers.

15. Credico controls a network of smaller companies in its network that directly market and sell services to consumers.

16. Imperial is one such company that operates within Credico's network.

17. Verizon and Imperial jointly hired Plaintiff to provide marketing and sales for Verizon FIOS services in retail stores throughout the Commonwealth of Massachusetts.

18. In or around October of 2016, Plaintiff applied for a position as a Business Development Director with Defendant Imperial. The advertised position offered between $40,000 and $50,000 per year.

19. Plaintiff engaged in employment negotiations with the president of Defendant Imperial, Kokila Alahakoon.

20. Plaintiff initially agreed to compensation based on a commission-only structure with a guaranteed floor rate of $400 per week.

21. As negotiations continued, a new agreement was made, in which the parties agreed to a commission-only structure with a guaranteed floor rate of $500 per week.

22. At some point during negotiations, an issue arose in which Plaintiff and Imperial needed to restructure the agreement, in order for Plaintiff to apply for an employment visa from her native country of Australia.

3

23.     As a result of this restructuring Plaintiff ultimately agreed and contracted to an hourly rate of $40 per hour. This was the final contracted employment arrangement, and the arrangement indicated on Plaintiff's Department of Labor ETA Forms 9035 and 9035E.

24.     Plaintiff was told that she would receive health insurance as a benefit of her employment. However, health insurance was never offered or provided by Defendants.

25.     At all times relevant and material hereto, Plaintiff was an employee and would be entitled to all benefits related to her employment.

26.     Plaintiff began mandatory training on November 28, 2016.

27.     Plaintiff was not compensated for of the training time, which lasted two (2) weeks, or fourteen (14) days, from 11:00 AM to 9:00 PM.

28.     Three (3) of the training sessions were exclusively conducted by staff members working for Verizon. Furthermore, Plaintiff was provided with Verizon sales materials.

29.     At the conclusion of her training, Plaintiff was provided with a Verizon ID Badge, and was responsible for selling solely Verizon services.

30.     Plaintiff's primary job responsibility was to travel to retail establishments in Massachusetts and Rhode Island solely for the sole purpose of selling Verizon FIOS services to consumers.

31.     Plaintiff worked in WalMart stores in North Attleboro, Massachusetts, and in various stores in northern Rhode Island selling solely Verizon services and products.

32.     Plaintiff was provided with a Verizon booth marked exclusively with Defendant Verizon's logos and information. Using this booth and equipment, Plaintiff

4

made at least eighty-seven (87) sales of Verizon FIOS services during her employment with Defendants.

33.     During her entire employment with the Defendants, Plaintiff sold only Verizon products and services.

34.     After being employed, Plaintiff was only paid commission for Verizon products and services sales that she made. All sales required approval from Verizon.

35.     If Verizon did not approve a sale, Plaintiff was not paid her due commission.

36.     Plaintiff was only paid after Verizon approved a sale regardless of the number of hours, she worked during the relevant pay period.

37.     The Defendants specified the hours and locations that Plaintiff was to work, provided all guidelines, trainings, materials, and equipment for her work.

38.     Plaintiff was generally required to be in her assigned store between 11:00 AM and 8:00 PM, Monday through Saturday.

39.     Plaintiff was required to attend morning meetings prior to leaving for her assigned store. These meetings took place everyday that Plaintiff worked from approximately 10:00 AM to 11:00 AM.

40.     During these morning meetings, Plaintiff was discouraged from taking lunch breaks, and encouraged to work additional hours, and on Sundays.

41.     On Tuesday and Thursday nights, after 8:00 PM, Plaintiff had to report for mandatory social meetings with other employees. The events generally lasted from approximately 8:00 PM until 11:00 PM and were held every week. Plaintiff did not attend four (4) of these events and was reprimanded as a result.

42.     Beginning in December of 2016, Plaintiff took on a role as a corporate trainer and spent additional hours outside of her regular work hours training new recruits, and driving these new recruits to various locations. Plaintiff was not compensated for these hours.

43.     Plaintiff did work in excess of 40 hours during a number of weeks, and worked on one Sunday, on on President's Day of 2017.

44.     Plaintiff was never paid more than her commissions, regardless of the hours worked, any overtime worked, or any Sundays or Holidays worked.

45.     Plaintiff never received any health insurance benefits.

46.     During 2016 and 2017, Plaintiff received both a W-2 (for period) and a 1099.

47.     In or around March 2017, Plaintiff informed her supervisor at Defendant Imperial of her resignation and ceased working for the Defendants.

48.     Pursuant to M.G.L. c. 149, § 150 and M.G.L. c. 151, §§ 1B, 20, Plaintiff, through her attorney, received authorization from the Massachusetts Attorney General's Office to pursue a private right of action, on or about October 3, 2019.

## COUNT 1
### Breach of Contract Against All Defendants

49.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 above as if fully set forth in their entirety.

50.     Defendants and Plaintiff entered into a valid employment contract wherein Plaintiff was entitled to receive $40 per hour in compensation for her work, as well as health insurance benefits.

6

51.     Defendants materially breached this contract in failing to pay Plaintiff the promised compensation and failing to provide health insurance to Plaintiff.

52.     Plaintiff was damaged by this breach of contract in an amount equivalent to the difference between the wages she would have been owed under the contract and the wages she received, as well as all costs associated with the non-provision on health insurance.

## COUNT 2
### Massachusetts Minimum Wage Violation Against All Defendants

53.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 52 above as if fully set forth in their entirety.

54.     Plaintiff was an employee of the Defendants in Massachusetts, working in North Attleboro, Massachusetts.

55.     Defendants paid Plaintiff on a commission-only basis, resulting in payments that were significantly less than the Massachusetts minimum wage for the hours that she worked.

56.     Defendants knowingly and willfully did not pay Plaintiff the minimum hourly wages that were required in 2016 or in 2017, in violation of M.G.L. c. 151, §§ 1, 2, 7.

57.     As a proximate result of the Defendant's failure to pay just wages, Plaintiff was damaged in the amount of such wages as she was owed.

## COUNT 3
### Massachusetts Overtime Law Violation Against All Defendants

58.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 57 above as if fully set forth in their entirety.

59.     Plaintiff was an employee of the Defendants in the Commonwealth of Massachusetts, working in North Attleboro, Massachusetts.

7

60.     Defendants paid Plaintiff on a commission-only basis, without regard for additional compensation for hours she worked in excess of forty (40) per week, or Sundays or Holidays.

61.     Defendants knowingly and willfully did not pay Plaintiff 1.5 times her hourly wage for time worked in excess of forty (40) hours per week, or for time worked on Sundays and Holidays in violation of M.G.L. c. 151, § 1A.

62.     As a proximate result of the Defendant's failure to pay overtime wages, Plaintiff was damaged in the amount of such wages as she was owed.

## COUNT 4
### Discouragement of Lunch Breaks Against All Defendants

63.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 62 above as if fully set forth in their entirety.

64.     During morning meetings and at other events, the Defendants told Plaintiff not to take lunch breaks while working.

65.     Defendants thus, expressly and willfully, discouraged the taking of thirty (30) minute lunch breaks on days when Plaintiff worked at least six (6) hours in violation of M.G.L. c. 149, § 100.

66.     Plaintiff suffered damages as a proximate result of this violation.

## COUNT 5
### Misclassification Against All Defendant

67.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 66 above as if fully set forth in their entirety.

68.     Plaintiff was hired as an employee by the Defendants, and at all times her actions were directly controlled by the Defendants.

69.     Defendants provided Plaintiff with all training, guidance, materials, and supplies needed for her to perform the duties of her job.

70.     Defendants controlled the times and locations that Plaintiff was required to work.

71.     Plaintiff was paid as both an employee and an independent contractor in both 2016 and 2017.

72.     There was no change in relationship between Plaintiff and the Defendants throughout Plaintiff's employment.

73.     Plaintiff was informed and believes that the Defendants at times classified her as an independent contractor for their own tax benefits, to the detriment of Plaintiff.

74.     Plaintiff was unwillingly required to pay additional federal and state taxes on the wages she earned while classified as an independent contractor.

75.     Defendants thus misclassified and improperly paid Plaintiff as an independent contractor in violation of M.G.L. c 149, § 148B.

76.     Defendant's willful misclassification of Plaintiff damaged Plaintiff in the amount of her extra tax liabilities and expenses.

## COUNT 6
### Federal Minimum Wage Violation Against All Defendant

77. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 above as if fully set forth in their entirety.

78. Defendants paid Plaintiff on a commission-only basis, resulting in payments that were significantly less than the federal minimum wage for the hours that she worked.

79. Defendants knowingly and willfully did not Pay Plaintiff the minimum federal hourly wages required in 2016 or in 2017, in violation of 29 U.S.C. § 206.

80. As a proximate result of the Defendant's failure to pay just wages, Plaintiff was damaged in the amount of such wages as she was owed.

## COUNT 7
### Federal Overtime Law Violation Against All Defendant

81.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 80 above as if fully set forth in their entirety.

82.    Defendants paid Plaintiff on a commission-only basis, without regard for additional compensation for hours she worked in excess of forty (40) per week.

83.    Defendants did not pay Plaintiff 1.5 times her hourly wage for time worked in excess of forty (40) hours per week in violation of 29 U.S.C. § 207.

84.    As a proximate result of the Defendant's failure to pay overtime wages, Plaintiff was damaged in the amount of such wages as she was owed.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

1.  Restitution for all wages, contractual damages, and other damages that are owed Plaintiff;

2.  Statutorily trebled damages for all wage-related claims;

3.  Prejudgment and post judgment interest

4.  All reasonable attorney's fees and costs;

5.  Any other relief that this Court deems just, proper, and equitable, and to which Plaintiff is entitled.

## DEMAND FOR A TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues to be tried.

Respectfully submitted,

Alexander Conley, BBO # 698494
Adela Aprodu, BBO # 690710
APRODU | CONLEY, PLLC
153 Andover St., Suite 205
Danvers, MA 01923
P. 978-406-9090 | F. 978-908-2132
acc@apco.law
adela@apco.law

DATE: November 29, 2019